ELECTRIC STORAGE BATTERY CO. v. BELKNAP et al.

(Circuit Court, N. D. New York. December 19, 1901.)

PATENTS—INFRINGEMENT—STORAGE BATTERIES.
    The Brush patent, No. 337,299, for improvements in secondary batteries, *held* infringed by the electrode of the Sperry patent, No. 660,228, on motion for preliminary injunction.

In Equity. Suit for infringement of patent. On motion for preliminary injunction.

The complainant, who is the owner of letters patent, No. 337,299, granted to Charles F. Brush, March 2, 1886, for improvements in secondary batteries, moves for a preliminary injunction restraining the defendants from infringing claims Nos. 1, 2, 3, 7, 9, 10, and 12. Few patents have been so frequently before the courts. For more than a dozen years it has been the subject of fierce and persistent attack, but has always been sustained. Electrical Accumulator Co. v. Julien Electric Co. (C. C.) 38 Fed. 117, 128–131; Brush Electric Co. v. Same (C. C.) 41 Fed. 679; Same v. Electrical Accumulator Co. (C. C.) 47 Fed. 48, affirmed in 2 C. C. A. 682, 52 Fed. 130; Id. 50 Fed. 833; Brush Electric Co. v. Milford & H. St. Ry. Co. (C. C.) 58 Fed. 387; Hatch Storage Battery Co. v. Electric Storage Battery Co., 41 C. C. A. 133, 100 Fed. 975. The sole-question is one of infringement. At the argument it was conceded that if complainant's affidavits correctly describe the defendants' electrodes infringement is established. The defendants have, however, introduced a number of affidavits, contradicting those of the complainant, tending to show that their electrodes are made by the forming process described in an Italian patent granted to Brush, which patent has expired. A description of this process is found in "Division D" of the English patent, No. 3,108, of December, 1882. If the complainant's right to an injunction depended upon the establishment of all the facts alleged in the moving papers it is quite possible that the court would hesitate to issue the writ, in accordance with the rule that a genuine issue of fact upon a vital point should not be decided upon affidavits. But the complainant insists that, on their own papers, the defendants have not shown a defense, and that, upon the entire record, the charge of infringement is proved beyond the peradventure of a doubt.

John R. Bennett, for complainant.
William A. Redding, for defendants.

COXE, District Judge (after stating the facts). The concessions at the argument have limited the controversy to the single proposition, is the defendants' electrode the one described in "Division D" of the expired Italian patent? Almost every conceivable question as to the scope of the invention and the construction of the claims has been decided in previous litigations. The effect of the expiration of the Italian patent upon the patent in suit received careful attention both in the circuit court and in the circuit court of appeals. It was held that the patent in suit covers the pioneer invention of Mr. Brush made prior to the winter of 1880 and that the Italian patent relates to an entirely different and subsidiary invention made in the spring of 1882. The former is for the broad invention of a storage battery electrode consisting of a support coated or combined with the absorptive substance, active material or material adapted to become active, which is mechanically applied prior to immersing in the battery liquid. Brush Electric Co. v. Milford & H. St. Ry. Co. (C. C.) 58 Fed. 387, 390. The latter is for an element, "formed" Planté-wise, composed of or coated with a solid coherent and malleable metallic mass. In the language of the circuit court of appeals of the second circuit "The electrodes of the respective patents are different things and one does not interfere with the other." Electrical Accumulator Co. v. Brush Electric Co., 2 C. C. A. 682, 52 Fed. 130, 140. If "Division D" describes the electrode of the defendants, No. 337,299 would not be in existence to-day; the patent was upheld because the court drew a sharp distinction between the electrode of "Division D" and the type to which the defendants' electrode clearly belongs. The defendants' electrode is made pursuant to the formula of the patent granted to Elmer A. Sperry, October 23, 1900. The description of the electrode and method of constructing it is more concise than that found in the depositions of the experts. The specification says:

"My invention is an improvement in the plates or elements of secondary or storage batteries; and said invention consists in a plate or element composed of a sustaining sheet or body of lead or other similar and equivalent material to which, as to one or both sides, is applied or in any suitable manner attached a mass consisting of a mechanical mixture of lead particles, oxides of lead, and an alkali-metal salt moistened with a solution of a hydroxide of the alkali metals. * * * The mixture of the lead, the oxide or oxides, and the alkali-metal salt or salts is diluted until it reaches the consistency of thick dough, and while being vigorously stirred there is added a solution of hydroxide of an alkali metal—such, for instance, as liquid ammonia diluted to from three-fifths to one-fourth with distilled water. When the mass has been thus thinned down to a condition which permits it to be readily spread over a conducting plate or grid, it will be found to have the property of setting peculiar to cement. It is then applied in any convenient manner to the plate or grid and is by preference caused to adhere thereto as a closely-coherent mass compacted by pressure in a mold. * * * In making up the compound above described the proportions of metallic lead and lead oxide may be greatly varied, the proportion of salt employed being generally determined by the relative amount of the oxide present, and not usually more than a few per cent. I have found, for example, that very serviceable plates may be produced by the use of from eighty to eighty-five

per cent. of finely-divided lead, from fifteen to twenty per cent. of the oxide of lead, and an admixture of a salt, such as sulphate of ammonium, amounting to about one twenty-fifth of the whole mass."

The second claim of the Sperry patent is as follows:

"2. A storage-battery element consisting of a supporting grid or plate having a coating attached thereto, said coating primarily composed of finely-divided metallic lead, lead oxide and an alkali-metal salt, moistened with a solution of a hydroxide of the alkali metals, substantially as set forth."

Comparing this language with that of the patent in suit, it will be found that an electrode so constructed is unquestionably within several of the claims. For instance, the first, which is as follows:

"A secondary-battery element or electrode consisting of a plate or suitable support primarily coated or combined with mechanically applied active material or material adapted to become active, substantially as set forth."

In the Milford & H. St. Ry. Case (C. C.) 58 Fed. 387, 391, Judge Colt describes the invention as follows:

"The Brush invention is simple and easily understood. There is (1) the supporting plate; (2) the active material mechanically applied thereto; (3) the active material held to the plate by pressure, or by a sheet of porous nonconducting material. It is the combination of these elements in the formation of the secondary battery which is covered by the patent in suit. By this means Brush produced the first commercial storage battery ever made."

Can there be a doubt that the defendants' electrode has each of these features? It is thought not. But the defendants insist that their plates, after leaving the molds, are put through a long preliminary "forming" process, which distinguishes them from the Brush electrodes. It should be observed, imprimis, that the claims are for an (one) electrode, not two electrodes associated together (Electrical Accumulator Co. v. Julian Electric Co. [C. C.] 38 Fed. 122, 124), and they are not for a secondary battery. It would seem, therefore, when the defendants are shown to have made an electrode, which is clearly an infringement, that it can matter little what they subsequently do with it. As to the defendants' positive electrode there seems to be no answer whatever to the charge of infringement. Their hydrogen element is subjected to a reducing treatment occupying eleven days, but not the oxygen element. At the end of the eleven days the negative element is connected with the positive element to which the active material has previously been mechanically applied and both the positive and negative plates are subjected to a charging current for six days. This is precisely what is done to all the positive plates made under the Brush patent and is known as the "factory charge." The testimony appears to be uncontradicted that this initial charge when applied to the Brush plates occupies from six to seven days. The defendants' contention would seem to lead to the logical conclusion that they may use a plate confessedly constructed under the Brush patent and escape infringement by associating it with a plate that does not infringe. But the court is convinced that both of the defendants' elements infringe. The so-called "forming" process is not a forming process as that term has been understood in the art and interpreted by the courts. The active material has all been mechanically ap-

plied to the plates before being placed in the battery fluid, there is, therfore, nothing to form. The defendants' so-called forming process is simply a prolonged—unnecessarily prolonged it would seem—charging process.

This effort to evade the patent is not new. It was attempted years ago and a similar process was aptly termed by the court to be, "a retarded charging process." 58 Fed. 387, 394. The court is convinced that the defendants' electrode is nearer the structure of the claims than several devices heretofore held to be infringements. The result of a decision in defendants' favor will be the death blow to the complainant's patent, for anyone can then avoid it who has wit enough to make inconsequential changes in the ingredients of the active material, or in the treatment of the electrode after being placed in the battery fluid. The patent is too firmly established by an almost unprecedented series of decrees and its claims have been too often interpreted to secure broadly the highly meritorious invention of Mr. Brush, to warrant any judicial experimentation at this late day. Reference has recently been made by defendants' counsel to Brush patent No. 266,089. It will be remembered that at the argument the issue was narrowed to the single proposition whether or not the defendants' plates were made pursuant to "Division D" of the expired Italian patent; "Division D" of the English patent being agreed upon as an accurate translation. The materiality of No. 266,089 has not been pointed out and the court is unable to perceive how it affects in any way the present issue. The court has not lost sight of the defendants' plea to be permitted to give a bond, but whatever argument is made upon the so-called "equities" of the situation is met and answered by the single proposition that the complainant is right and the defendants are wrong—knowingly and deliberately wrong.

It is thought that a construction of all the claims involved is unnecessary and unwise upon a motion for an injunction. An order restraining the infringement of the first three claims will answer every purpose and such an order may be entered.